# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES NUGENT** | **CIVIL ACTION** |
| **VERSUS** | **NO:  19-14759** |
| **SCOTT FETZER COMPANY** | **SECTION: "H" (4)** |

## ORDER

Before the Court is a **Non-Party Charles Nugent's Motion to Quash Subpoena (R. Doc. 1)** filed by Nonparty Charles Nugent seeking and order (1) quashing the subpoena served upon Nugent and (2) imposing sanctions on Scott Fetzer and/or its counsel for serving a frivolous subpoena, to include attorneys' fees and costs associated with this motion . The motion is opposed. R. Doc. 12. The motion was heard by oral argument on January 22, 2020. R. Doc. 17.

### I.  Background

*Scott Fetzer Company v. Marcus Quinn, Nathan Ramker, and Sunflora, Inc.* was filed in the Court of Common Pleas for Cuyahoga County, Ohio on May 6, 2019. R. Doc. 12-1. On June 5, 2019, the case was removed to the United States District Court for the Northern District of Ohio. *Scott Fetzer Co. v. Quinn, et al.*, 19-cv-01296 (N.D. Ohio, June 5, 2019) (hereinafter, "*Scott Fetzer v. Quinn*") R. Doc. 1. Plaintiff The Scott Fetzer Company ("Scott Fetzer") seeks damages and injunctive relief from the Defendants alleging breach of contract, tortious interference with prospective business relations, unfair competition, and civil conspiracy. R. Doc. 12-1.

Scott Fetzer alleges that Defendants Marcus Quinn ("Quinn") and Nathan Ramker ("Ramker") worked as independent contractors for The Kirby Company ("Kirby"), an unincorporated division of Scott Fetzer.[1] Kirby sells home cleaning systems though in-home

---

[1] These facts were taken from the Civil Complaint in *Scott Fetzer v. Quinn* pending in the Northern District of Ohio.

demonstrations conducted under the supervision of authorized independent distributors. According to Scott Fetzer, distributors are the lifeblood of Kirby's business model as they are responsible for promoting, maintaining, and increasing in-home sales and use of Kirby's cleaning systems through the development of an independent sale force.

Quinn began working for a Kirby distributor approximately twenty years ago in Florida. Ramker began working for Kirby at his father's dealership in Wisconsin nearly three decades ago. The distributors entered into a contractual relationship with Kirby via a Distributor Agreement. Quinn was a distributor and divisional director with Kirby whose area include over 135 counties in Alabama, Florida, Georgia, and Mississippi. Ramker was a distributor and divisional director for Wisconsin.

Among other things, the Distributor Agreements provide, "in the event [the distributor's] services are not available full time to the distributorship" that distributor is subject to termination;[2] and requires that distributors recommend "at least one qualified person from his/her sales force for possible appointment by [Kirby] as factory distributor" during each eighteen-month period that agreement is in effect;[3] and "[d]uring the term of this Agreement and for two (2) years thereafter regardless of the reason for the end of the term), the Distributor will not, directly or indirectly, for or on behalf of the Distributor or any other person or entity, solicit recruit or contract with (other than to sell Kirby Systems), attempt to solicit or recruit, or cause to be solicited or recruited any Current Kirby Regional Vice President, Divisional Director, Factory Distributor, Distributor Trainee, Dealer, Canvasser, customer, and/or any employee of the Company, and/or anyone else with an independent contractor agreement with the Company and/or with any of its distributor,

---

[2] Section 2(b).
[3] Section 6(e).

anywhere in the world."[4] Kirby also requires distributors use their best efforts to act in accordance with all policies of Kirby, which may be established or revised from time to time by Kirby.

On May 22, 2018, SunFlora was incorporated in Florida. The company sells various CBD products under the "SunFlora" and "SunMed" labels with Quinn serving as president. SunFlora actively recruits individuals to own their own stores and become affiliates that sell their own CBD products. Kirby alleges that in mid-to-late-2018 it came to learn that Quinn was directly or indirectly soliciting and attempting to recruit active Kirby distributors to become involved in selling or promoting CBD products. Of the distributors he convinced to become involved in the sale of CBD products was Ramker. Kirby also alleges that SunFlora utilizes a program similar to the Road to Success[5] program developed by Kirby because SunFlora offers financial incentives to affiliates that recruit others to open CBD stores.

Kirby alleges that as Ramker and his wife began operating multiple stores and selling SunFlora's products across Iowa, that the volume of home cleaning systems that Ramker purchased from Kirby (and sold to customers) steadily dwindled. Kirby also alleges that Ramker's son, a distributor trainee, opened a CBD store in Missouri. Ramker's entire family then began soliciting and recruiting Kirby Distributors to become involved in the selling of CBD products. Kirby alleges that many of these individuals were successful, long-time distributors, who were consistently among the top distributors in the world.

Of these individuals includes Charles Nugent. R. Doc. 1. Nugent was employed by Kirby and Scott Fetzer as a Distributor for eleven years intermittent from 2001 to 2018. R. Doc. 1-2, p. 2. In July of 2018, Nugent's wife, Crystal Nugent opened a cannabidiol store in New Orleans,

---

[4] Section 16(c).
[5] Under Kirby's Road to Success program, Kirby pays the appointing distributor a portion of the Cost of every Kirby home cleaning system purchased by their appointees and awards a bonus for maintain a certain number of appointees annually.

Louisiana. Nugent maintains, although he loaned his wife money to open the store that he was otherwise not involved.[6] *Id.*

On October 8, 2018 Kirby sent a letter to Quinn and Ramker demanding that they cease and desist violating their Distributor Agreement by selling CBD products and soliciting and recruiting active distributors to do the same.

Kirby, soon thereafter, issued the written policy "Factory Distributor Policy Regarding Prohibited Business Involvement" on October 23, 2018. Kirby has stipulated in that Policy that it will terminate the Distributor Agreements of any Distributors who:

- Do not use their best full-time efforts to build and grow their Kirby distributorships;
- Have involvement with other business interest that distract them from spending their full time in their Kirby distributors;
- Encourage, directly or indirectly, other members of the Kirby field to pursue business interest that, in the sole discretion of Kirby management, are not related to Kirby; and
- Own or have any interest, involvement, or investment in any business that is illegal under state or federal law, including any business that sells or promotes cannabinoid products, like CBD.

By its terms, the Policy applies to both distributors and distributors trainees who own, or operate, or whose spouse, or significant other or immediate family member owns or operates, a business that sells cannabinoid products like CBD.

After the issuance of this policy, Nugent was threatened with termination for allegedly, "soliciting and attempting to recruit active Distributors of Scott Fetzer for other purported opportunities in what is known as the CBD business." Rather than termination, on November 24, 2018, Nugent resigned from Kirby and Scott Fetzer. R. Doc. 1-2, p. 2-3.

---

[6] Nugent also claims that he contacted Kevin Reitmeier, then-President of Kirby, in April of 2018 to inform him that his wife was contemplating opening a CBD store

In February of 2019, Kirby finding Quinn's and Ramkin's wrongful conduct had only intensified, Kirby terminated their Distributor Agreements. Nugent alleges that when Quinn, one of the highest-performing Kirby distributors in the world, departed from Kirby that it set off a spate of other departures, from Kirby and Scott Fetzer. R. Doc. 1-2, p. 1-2.

Kirby contends that it issued the Policy to protect its reputation because companies that sell products containing cannabidiol are proselytizing Kirby's distributors and top salespeople in an attempt to recruit them to sell CBD products and the legality of CBD and other products is disputed.[7] Kirby also alleges that it wrote the Policy to include spouses and immediate family members because Quinn and Ramker encourage the Kirby distributors they solicit and recruit to place the CBD stores in the names of their spouses and/or immediate family members to avoid detection from Kirby.

Since the initiation of the suit, Kirby and Scott Fetzer have, according to Nugent, served fifteen (15) other former nonparty Kirby distributors and/or divisional supervisors with subpoena duces tecum. R. Doc. 1-2, p. 2. Nonparty Nugent maintains that the subpoena is harassing and retaliatory act against Quinn. Nugent also maintains that Scott Fetzer requests are overbroad, do not allow reasonable time for compliance, and seek numerous confidential and proprietary documents that are not relevant to Scott Fetzer's lawsuit against Quinn. R. Doc. 1-2, p. 3. Plaintiff Scott Fetzer maintains that this motion to quash is untimely, Nugent waived any objections to the subpoena requests, and all of Nugent's objections lack merit. R. Doc. 12.

---

[7] Kirby contends these companies falsely claim that CBD is legal in all fifty states, and also make unsubstantiated and unproven claims regarding the health benefits of CBD, which has prompted the Food and Drug Administration to issue warning letters to those companies. Kirby does not provide any of these warning letters to the Court.

## II.    <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 45(d)(3) governs the quashing or modifying of subpoenas. The Court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). The Court may also modify or quash a subpoena that requires the disclosure of a trade secret or an unretained expert's opinion that does not describe specific occurrences in dispute and results from that expert's study that was not requested by a party. Fed. R. Civ. P. 45(d)(3)(B).

 Subpoenas under Rule 45 may be served upon both party and nonparties. *Petit v. Heebe*, No. 15-3084, 2016 WL 1089351, at *2 (E.D. La. Mar. 21, 2016). However, in order to challenge the subpoena, the movant must: be in possession or control of the requested material; be the person to whom the subpoena is issued; or have a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *see also Johnson v. Mixon*, No. 13-2629, 2014 WL 1764750, at *4 (E.D. La. May 2, 2014).

"Both Rules 45 and 26 authorize the court to modify a subpoena *duces tecum* when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45." *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . ." Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

### III. Analysis

#### A. Timeliness

Nonparty Nugent filed his motion to quash on December 24, 2019. R. Doc. 1. Plaintiff Scott Fetzer contends the filing of this motion is untimely because Nugent did not file the motion within the time set for compliance in the subpoena. Plaintiff concedes that while it agreed to extend Nugent's deadline for compliance on three separate occasions, Nugent did not file his motion until nearly two weeks after the extended deadline passed.

 Federal Rule of Civil Procedure 45 provides that a person commanded to produce documents must lodges its objection "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). Nonetheless, Rule 45 also provides that a Court must quash or modify a subpoena when it "fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A). However, the Rule does not specify what length of time is reasonable. Reasonableness varies depending on the circumstances of each case. *Bergeron v. Great W. Cas. Co.*, No. CIV.A. 14-13, 2015 WL 5307685, at *2 (E.D. La. Sept. 10, 2015) (citing *Freeport McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Resource, Inc.*, No. 03–1496, 2004 WL 595236, at *9 (E.D. La. Mar. 23, 2004)). Courts have "noted that anything less than 14 days is

likely unreasonable." *Id.* (citing *Hall v. Louisiana*, Civ. A. No. 12–657 2014 WL 1652791 (M.D. La. Apr. 23, 2014)).

Plaintiff issued its subpoena duces tecum to nonparty Nugent on October 25, 2019. R. Doc. 1-2. While Plaintiff Scott Fetzer's commanded November 20, 2019 as the date for compliance, the record reflects that the subpoena was not served upon Charles Nugent until November 13, 2019. R. Doc. 1-2 and R. Doc. 12-5. While the subpoena itself provided twenty-six days for compliance and does not prima facie provide an unreasonable time for compliance, given that it was served on Nugent on November 13, 2019, Nugent was only allotted seven days for compliance. Seven days is simply clearly unreasonable time for compliance.[8] *See Hall v. Louisiana*, Civ. A. No. 12-657, 2014 WL 1652791, at *12 (M.D. La. Apr. 23, 2014) (eight to twelve days for compliance is clearly unreasonable). As such, Nugent needed to object to the subpoena before the time specified for compliance.

Still, Rule 45(d)(2)(B) provides, in the alternative, the objection must be served fourteen days after the subpoena served. Fed. R. Civ. P. 45(d)(2)(B). Fourteen days after Nugent's date of service is November 27, 2019. Nugent's motion to quash was not made until December 24, 2019. As such, Nugent needed to object to the subpoena fourteen (14) days after it being served on him, and, as no objection was lodge with the Court before that time, Nugent's objections are not timely.

Nonetheless, while courts within the Fifth Circuit have held that failure to serve timely objection to a subpoena pursuant to Rule 45(d)(2)(B) generally results in a waiver of all grounds for objection, including privilege, courts have also held that "the failure to act timely will not bar consideration of objections in unusual circumstances and for good cause shown." *Andra Grp., LP*

---

[8] The Court notes the time for compliance as contemplated by Federal Rule of Civil Procedure 45 reflects the time from service of subpoena upon the party to the date of return as opposed to the date of issuance to the date of the return.

*v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015)(internal citations omitted); *see, e.g., Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 51–52 (S.D.N.Y. 1996) (finding a nonparty witness's alleged failure to object promptly in writing to subpoena requesting discovery of documents did not result in waiver of objections where witness actively communicated with plaintiffs' counsel in procuring extension of time.)*; see also Celanese Corp. v. E. I. duPont de Nemours & Co.*, 58 F.R.D. 606 (D. Del. 1973) (finding although failure of Plaintiff to file objections to a subpoena duces tecum which it considered unreasonable and oppressive within time limited by rules would not be condoned, where Plaintiff's failure to timely file objections was not deliberate or willful, but was in part based on discussions with counsel for other party.).

Unusual circumstances may exist where a party's failure to timely act in objecting to the subpoena may not bar consideration of objections to subpoena; such as where the subpoena is (1) overbroad on its face and exceeds bounds of fair discovery, (2) the subpoenaed witness is non-party acting in good faith, and (3) counsel for the nonparty and counsel for subpoenaing party were in contact concerning the nonparty's compliance prior to time the nonparty challenged legal basis for subpoena. *Concord Boat*, 169 F.R.D. at 51–52; *see also Andra Grp.*, 312 F.R.D. at 449 ("Unusual circumstances warranting consideration of objections have included those where counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena.").

The Court, as an initial matter notes, as a nonparty, Nugent is not held to the same standards as that of a named party in this litigation. Moreover, here, the record reflects that nonparty Nugent's counsel was in contact with counsel for Scott Fetzer as soon as November 19, 2019, before even Scott Fetzer's unreasonable time for compliance. R. Doc. 12-6. In those communications, Scott Fetzer agrees to multiple extensions as to the subpoena's date and time for

compliance, up to and including December 13, 2019.[9] R. Doc. 12-6 and R. Doc. 12-9. The repeated communications exemplify the unusual circumstances as articulated in *Andra Group*, namely that "counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena." *Andra Grp.*, 312 F.R.D. at 449.

In addition, the Court notes that while Nugent did not initially assert any objections, that was, in large part, due to his position that did not own the CBD business, his wife did, and, as such, he was not in possession of any responsive documents. It was only when Nugent's initial responses received pushback from Scott Fetzer, in that Scott Fetzer would not accept Nugent's repeated denials of any sort ownership interest in the CBD business based on discovery produced by other parties, did Nugent capitulate, retain new counsel, file this motion, and finally assert objections. The Court, here, calls attention to the facts that Nugent's change in position seems to be prompted by none other than counsels' communication with one another.

Beyond those three factors, it appears at some point between December 4, 2019 and December 13, 2019 that Nugent retained new counsel. R. Doc. 12-9, p. 1 and R. Doc. 1-5, p. 2. The Court also notes that on December 13, 2019, the deadline imposed by Scott Fetzer's third subpoena compliance deadline extension, Nugent's new counsel also reached out, in the form of email communications, to Plaintiff's counsel to confer as to Nugent's compliance with the subpoena. The Court is of the opinion Nugent's substitution of counsel is also an unusual circumstance warranting consideration of objections.

---

[9] The Court notes that Nugent sent responses to the subpoena's request to produce documents and information on November 25, 2019. R. Doc. 12-7. To date, however, no documents have been produced. Moreover, on November 27, 2019, Plaintiff Scott Fetzer objected to most of Nugent's responses and communicated with Nugent's counsel as to its perceived deficiencies.

After review of the circumstances surrounding this subpoena, Nugent has exemplified three factors recited by courts in determining the existence of an unusual circumstance in that the subpoena is overbroad on its face, Nugent is a nonparty that the Court has no reason to believe is not acting in good faith, and Nugent's counsel and Scott Fetzer's counsel were in communication the entire time after the subpoena was properly served. What is more, is that Nugent had a change of counsel during his time for compliance. In the Court's opinion, all of these factors sufficiently satisfy the showing of the unusual circumstances as contemplated by previous courts. Accordingly, as the Court finds unusual circumstances exist despite Nugent's failure to timely file objections, the Court will exercise its discretionary powers to proceed with the review of the subpoena despite this failure.

### B. Waiver of Objections

Next, Plaintiff Scott Fetzer argues that to the extent that Nugent objected to the subpoena requests, that such objections were waived when Nugent's prior counsel provided written responses to the subpoena and did not object to sixteen of the eighteen subpoena requests.[10] Scott Fetzer explains that only when it confronted Nugent's new counsel about deficient responses, and Nugent agreeing to supplement some responses, did Nugent's new counsel object to requests on grounds that had previous not been asserted.

Normally, "failure of a party to serve written objections within the time specified constitutes waiver." *Seabulk Towing, Inc. v. Oceanografia S.A. de C.V.*, No. 01-3791, 2002 WL 188419, at *2 (E.D. La. Feb. 4, 2002); *Duplantier v. Bisso Marine Co. Inc.*, No. CIV.A. 09-8066,

---

[10] Nugent objects to Subpoena Duces Tecum Request for Documents and Information Nos. 8 and 18. R. Doc. 12-7. The Court, here, notes to the extent Nugent provided information in response to any other request, all answers are limited to the generic statement that there are no responsive documents where Nugent, himself, does not own or operate a CBD store. *See id.*

2011 WL 2600995, at *3 (Roby, K.) (E.D. La. June 30, 2011) (finding Defendant's failure to formally object to the subpoena, only filing an untimely motion, resulted in a waiver of objections).

Nonetheless, Courts in the Fifth Circuit have addressed the four procedural options a non-party has once served with an overly broad subpoena duces tecum. *Arthur J. Gallagher & Co. v. O'Neill*, No. CV 17-2825, 2017 WL 5713361, at *1 (E.D. La. Nov. 27, 2017), *on reconsideration*, No. CV 17-2825, 2017 WL 6524044 (E.D. La. Dec. 21, 2017) (discussing the plaintiff's misguide persistence in continuing to assert the erroneous argument that a non-party waived its objections to the plaintiff's subpoena duces tecum by not asserting them within the fourteen days provided in Federal Rule of Civil Procedure 45(d)(2)(B)); *MetroPCS v. Thomas*, 327 F.R.D. 600, 607 (N.D. Tex. 2018) ("Under Federal Rule of Civil Procedure 45(d), either in lieu of or in addition to serving objections on the party seeking discovery, a person can timely file a motion to quash or modify the subpoena." (internal quotations omitted)).

The Court has also noted that of greatest significance in this rule is that it uses the permissive "may;" it does not use the mandatory "shall" or "must." *Arthur J. Gallagher*, 2017 WL 5713361, at *1; *MetroPCS*, 327 F.R.D. at 608. As a nonparty is not required to serve written objections, a nonparty's failure to include objections in its initial responses and communications does not result in the waiver of those objections were a motion to quash is later filed.

Moreover, "[e]ven untimely objections may be excused when, for example, a subpoena is overly broad on its face or places a significant burden on a non-party." *Sines v. Kessler*, 325 F.R.D. 563, 566 (E.D. La. 2018). Moreover . . . subpoenas duces tecum are discovery devices governed by Rule 45, [and are] subject to the parameters established by Rule 26. "[T]he court retains discretion to decline to compel production of requested documents when the request exceeds the

bounds of fair discovery, even if a timely objection has not been made." *Id.*, at 567 (citing *Schooler v. Wal-Mart Stores, Inc.*, Civ. A. No. 14-2799, 2015 WL 4879434, at *1 (E.D. La. Aug. 14, 2015)).

While Nonparty Nugent did not initially include formal objections in his initial subpoena responses, this did not result in waiver where his counsel and counsel for Plaintiff Scott Fetzer were in communication concerning compliance with the subpoena duces tecum. Moreover, the Court has already determined that unusual circumstances existed, which allows the Court to consider Nugent's untimely filing of this motion to quash. At first impression, as written, Scott Fetzer appears to seek discovery that exceeds the bounds of fair discovery. As such, the Court choses to exercise of its discretion and review the subpoena requests based on their merits.

### C. Merit of the Objections

To determine whether the subpoena presents an undue burden, courts within the Fifth Circuit consider the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Davis v. Fourth Circuit Court of Appeal*, No. CV 15-4169, 2016 WL 3970995, at *2 (Roby, K.) (E.D. La. July 25, 2016) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F. 3d 812, 818 (5th Cir. 2004)). Where a non-party is subject to a subpoena, "the court may also consider the expense and inconvenience to the non-party." *Frazier v. Runnels*, No. CV 18-2340, 2019 WL 398930, at *2 (E.D. La. Jan. 31, 2019) (citing *Wiwa*, 392 F.3d at 818). The Court should also consider whether the requested information is available from any other source. *Id.*

In explaining the necessity and relevance of these requests, Plaintiff Scott Fetzer explains that for over one-hundred years they have engaged in a successful business model that is under threat of disruption by the sale of CBD, which Scott Fetzer considers an illicit substance.

Specifically, Scott Fetzer explains that, due to the nature of their business model, which focuses on in-home appliance demonstrations and necessarily requires Kirby distributors to maintain certain standard of decorum and trustworthiness, Kirby is negatively impacts by the distributors' involvement in the controversial substance CBD. Scott Fetzer further explains that the issue boils down to brand protection where the company does not want current and potential clients to associate Scott Fetzer and Kirby with the sale of CBD due to the unauthorized actions of their distributors. Essentially, Scott Fetzer argues that the distributors involvement in the CBD business confuses the branding and promotes a mixed marketing message, which ultimately impacts their ability to sell vacuums.

The Court first notes that Nugent is not a party to the underlying proceeding taking place in Ohio. As such, the burden which Plaintiff Scott Fetzer may impose is lessened. Nugent was one of Scott Fetzer and Kirby's top-performing and most successful distributors prior to the termination of his distributorship agreement. While Scott Fetzer wants the Court to believe its position that the issue is brand protection, the Court remains circumspect. Based on the representations of Scott Fetzer and Nugent, it appears more likely that Scott Fetzer is disconcerted because Nugent, and other top distributors, has found a way to diversify their sales and Scott Fetzer wants their distributor-base to be in exclusive employ. As such, the Court hesitates to allow Scott Fetzer to embark on an outright fishing expedition in hopes of obtaining enough information to form the basis of a lawsuit against Nugent, who is currently a non-party to the underlying action.[11]

In addition, while Scott Fetzer contends that they have attempted to first seek discovery through more appropriate avenues, i.e., requests propounded to the named Defendants in the

---

[11] The Court notes that local Louisiana counsel denied knowledge of any such plan to join Nugent into the lawsuit, but the Court also notes local counsel at various times notes he is apprised of much of the strategy involved in the Ohio lawsuit.

lawsuit, Scott Fetzer maintains that it was meet with resistance where Defendants only made a limited production with the representation that their responses were final. This, however, does not mean that Scott Fetzer has "exhausted" its discovery obligations through more readily available sources as the company so claims, where, the Court notes, Scott Fetzer has not first sought any sort of judicial intervention through a procedural device such as a motion to compel prior to subpoenaing a non-party. Nevertheless, to the extent that Nugent is in the possession of certain documents, the Court will analyze the requests.

The Court first notes that from cursory review, the subpoena appears to have very little to do with vacuums, the trade in which Kirby is involved, and rather focuses on cannabidiol, or CBD, which is an active ingredient derived from marijuana.[12] Plaintiff's theory of the case is that Defendants, with the help of Nugent and other top distributors, were recruiting and siphoning off certain Scott Fetzer and Kirby sales agents to the detriment of the company. Plaintiff also contends that the Defendants', and Nugent's, CBD business implement the pyramid business and recruitment model that was perfected by the Scott Fetzer Company over a one-hundred-year period. Scott-Fetzer has accused these distributors with violating their distributor and associated agreements, which they contend have binding effect for two years after the termination of the Distributor Agreement. As such, Scott Fetzer wants to know who was involved in the civil conspiracy they allege, as well as those persons level of involvement, as an issue of damages in the underlying case. The main objection to all of the requests is Charles Nugent's assertion that no such document exist as Charles Nugent does not own a CBD Business where the company is in

---

[12] Peter Grinspoon, MD, Harvard Health Publishing: Harvard Medical School, "Cannabidiol (CBD)—What We Know and What We Don't" (Aug. 24, 2018), accessed at https://www.health.harvard.edu/blog/cannabidiol-cbd-what-we-know-and-what-we-dont-2018082414476.

his wife's name. Defendant contends that this answer is misleading, and a misrepresentation based on semantics violative of the principle of form over substance.

Scott Fetzer has documentation that tends to demonstrate that while the CBD business may be in Nugent's wife's name in title, Nugent's significant managerial involvement and operational actions show, for all intents and purposes, that Nugent is the true owner of the CBD business. *See, e.g.*, R. Docs. 12-2, p. 5 (SunFlora PowerPoint specially thanking founding members Crystal and Charlie Nugent), 12-3, p. 7 (Email from Charles Nugent signing affiliate to SunFlora describing the business interest as "our stores"), 12-4, p. 1 (Email from Quinn discussing the involvement of Charles Nugent in the expansion of the CBD Business). Based upon this position, Scott Fetzer has alleged an underlying civil conspiracy, which sets forth that former distributors, to include the Defendants and Nugent, registered their newly formed CBD businesses in the names of their respective wives as a ploy in an attempt to get around their distributors agreements which incorporate the company's policies, one of which precludes distributors from being involved in the CBD industry.[13]

After review of these documents, the Court is of the opinion that they sufficiently demonstrate that SunFlora and the other two individually named Defendants, both considered Charles Nugent and treated Charles Nugent as a partner in his wife's CBD business. The Court's opinion is further bolstered by Charles Nugent's own reference to CBD business as "our company". The word "our" is a collective possessive pronoun which necessarily connotates some sort of since of personal ownership and association; as opposed to "her" which would more properly convey that the CBD business was in the sole ownership of his wife.

---

[13] The Court notes that the issue of whether Scott Fetzer can enforce an *ex post de facto* policy with retroactive effect is not a question before this Court but is for the district court in Ohio to answer.

Still, the Court questions whether the substantive and temporal scope of these requests are tailored to Scott Fetzer's and Kirby's interest where many of the questions seem pointed at the CBD aspect of the business as opposed to the impact the opening of the businesses have on Scott Fetzer, which the company claims is its true intent in propounding this subpoena. The Court is of the opinion that where the lawsuit's complaint alleges violations of the distributor agreements and its corollaries, then Plaintiff's discovery requests must, in some way, be tied to those agreements and to the purpose of the lawsuit, which, Scott Fetzer claims, is to protect its brand.

Moreover, in general, considering the temporal scope, which, as written, the Court finds overbroad, the Court notes that a start date of January 1, 2018, is fair considering in April 2018, Charles Nugent's wife opened their CBD business, which should have been in the works for some time prior. The end of the critical period is determined by the date the Distributor Agreement was terminated—November 24, 2018. The distributor agreement provides that the contract has binding durational effect as to the non-compete limitations for two years following the termination of the distributor agreement. As such, the critical period would be capped at November 28, 2020. To this effect, the Court finds the critical period to be January 1, 2018 to the present, and to prevent continuing obligation, at no point to go beyond November 28, 2020.

With this temporal limitation in mind, as well as the Court's perspective on the substance of the requests the Court now turns to the individual requests for examination.

### a. *Requests Nos. 1-3*

Requests one through three seek documents concerning the formation, operation, and status of Charles Nugent's CBD business including all contracts and legal documents relating the CBD business. Scott Fetzer contends that contracts between Nugent and SunFlora are relevant because

they would show whether there is a direct business relationship between Defendants and Nugent as well as showing when that relationship began. R. Doc. 12, p. 8.

Nugent contends that these requests seek documents about Nugent's business formation, business plans, product evaluation, and product research which are all confidential. R. Doc. 1-2, p. 11 (citing *Bridgestone/Firestone, Inc. v. Lockhart*, 5 F. Supp. 2d 667, 681 (S.D. Ind. 1998) ("[I]nformation about customers, cost, and pricing is among the most fragile and ephemeral types of trade secrets"). Scott Fetzer explains that that it was forced to seek all contracts with "other CBD Businesses" because documents produced by Defendant indicate that the Defendants are using several companies with different names—all affiliated with SunFlora—to operate. Scott Fetzer also explains that this information is relevant to show whether, and to the extent, that Nugent is involved in the Defendants' CBD business even if Nugent did not sign the contract with SunFlora himself.

Here, the Court finds the questions are designed to gather as much information as possible as to Charles Nugent's involvement in the CBD business including the profits and revenue and third-party contracts, which the Court struggles to find relevant especially considering Charles Nugent is no longer even a distributor with Scott Fetzer or Kirby. As the Court finds Requests Nos. 1, 2, and 3 not relevant to the underlying lawsuit, the Court grants Nugent's motion to quash with respect to these requests.

### b. *Requests No. 4*

Request four seeks the documents related to the planning for and opening of stores for the CBD business in which Nugent is involved. To the extent that the distributor agreement governs former distributors' actions for a two-year period following the termination of a Distributor Agreement, an issue for the district court, the Court will allow discovery. As such, the Court denies

Nugent's motion to quash with respect to Request No. 4 as modified by the temporal scope of January 1, 2018 to the present.

### c. Requests Nos. 5-6

In Plaintiff Scott Fetzer's response brief to, Scott Fetzer withdraws Requests Nos. 5 and 6. R. Doc. 12-1, p. 10. As such, the Court grants Nugent's motion to quash with respect to Requests Nos. 5 and 6.

### d. Request No. 7

Request seven seeks information on the health benefit of CBD products, which it claims is relevant to the veracity and truthfulness of the recruiting tactics undertaken by the Defendants in poaching Scott Fetzer distributors and agents into SunFlora employ.

Scott Fetzer contends that Request No. 7 is relevant where SunFlora and, by extension, its affiliates have made unsubstantiated and unproven claims about the health benefits of CBD where such claims contribute to the disputed legality of CBD and were one of the reasons why Kirby issued a CBD policy. Scott Fetzer further explains that this goes to the issue of whether Defendants Quin and Ramker fraudulently induced Kirby distributors away with more lucrative business relationship.

While Scott Fetzer contends that this discovery is necessary to support an award of punitive damages in torts for fraud, Scott Fetzer's complaint alleges breach of contract, tortious interference with contract, tortious interference with prospective business relations, unfair competition, and civil conspiracy. *See Scott Fetzer v. Quinn* (R. Doc. 1-2). Nowhere in the complaint is fraud alleged. In addition, based on Scott Fetzer's description of the purported fraud, the company would not be the victim of the fraud, but rather the Kirby distributors who were lured away by the recitations of CBD health benefits. The Court further questions the ability of Scott Fetzer and

Kirby to gain as a beneficiary of fraud to which it is not the victim. The Court finds Request No. 7 is not relevant to the underlying issues in the case, and, accordingly, grants Nugent's motion to quash with respect to that request.

### e. Requests Nos. 8 and 10

Requests eight and ten concern communications between Charles Nugent with the Defendants in the underlying action Marcus Quinn and Nathan Ramker, now owners of a CBD enterprise.

Nugent explains that he and Defendant Quinn have been associates for approximately ten years and frequently communicate via text or email communications. Nugent contends that to require him to retrieve all messages from his cell phone and email provider (irrespective of whether they are still even available), and then determine which messages are responsive would both be expensive and time-consuming. R. Doc. 1-2, p. 5. Nugent also contends that Quinn and Ramker, as parties to the action, are the most viable mans to obtain the same evidence. As such, Nugent further contends he is improperly burdened with attempting to obtain these documents and tender them to Scott Fetzer when Scott Fetzer can directly obtain the documents from the Defendants to this action—Quinn and Ramker.

The Court can discern no problem in allowing discovery into these communications where Nugent, Quinn, and Ramker were all distributors with Kirby at the same time and the degree to which those communications violated the distributor agreement is a valid question to present to the district court. Without temporal scope, the Court, however finds these requests overbroad. Still, to the extent that the distributor agreement governs former distributors' actions for a two-year period following the termination of a distributor agreement, an issue for the district court, the Court

will allow discovery. As such, the Court denies Nugent's motion to quash with respect to Requests Nos. 8 and 10 as modified by the temporal scope of January 1, 2018 to the present. [14]

### f. Requests Nos. 9 and 11

Requests nine and eleven concern communications between Nugent and the wives of Defendants Marcus Quinn and Nathan Ramker, Rachael and Becky. With respect to Requests Nos. 9 and 11, Scott Fetzer claims that the requested information is important to the issue of solicitation. Scott Fetzer explains that the requests seek communications with the wives of the individual Defendants, which is relevant to the underlying action where Plaintiff claims the wives of Quinn and Ramker own multiple stores affiliated with SunFlora and have actively been involved in recruiting for SunFlora.

While the Plaintiff maintain that this information is relevant to its civil conspiracy theory, the distributer agreement was neither executed by Rachael Quinn or Becky Ramker, nor does the distributor agreement mention the wives of distributors. The Court finds that discovery of communications should be limited to just those communications between persons that were necessarily bound by the actual distributor agreement. As Rachael and Becky are not agents or employees of Scott Fetzer and Kirby, those communications between these women and Charles Nugent is not relevant to the underlying matter, and, accordingly, is not discoverable.[15] As such, the Court grants Nugent's motion to quash as the Requests Nos. 9 and 11.

---

[14] The Court here cautions Charles Nugent in responding that no responsive documents exist. The subpoena defines communications broadly to include "letters, text messages, voice messages, sound recordings, emails, videos, chats, and social media posts, comments, and direct messages." R. Doc. 1-3. It also includes communications that may have since been erased from a device and is stored in a cloud-based storage system or elsewhere. The Court urges Charles Nugent to check all of his devices—phones, desktop, computer, laptops, tablet, USB stick, etcetera, with this instruction in mind and amend and supplement his answer accordingly.

[15] The Court notes that this finding excludes any communications between Rachael Quinn and Charles Nugent and Becky Ramker and Charles Nugent that also include wither Marcus Quinn or Nathan Ramker pursuant to the Court previously mentioned ruling in regard to Defendants' communications with Charles Nugent.

### g. Request No. 12

Request twelve seek communications between person related to SunFlora. As written, the requests are overbroad to the extent that Scott Fetzer seeks communications with those agents of SunFlora that are not Quinn and Ramker.

Nugent contends that the requests seeks sizeable categories of documents which in anyway "relate to" broad and nebulous subjects. Nugent also objects to the extent that these requests lack a temporal scope. Nugent further contends that because the requests include vague terms that he, especially as a nonparty, should not be required to respond to ill-defined amorphous requests. Nugent also contends that Requests 13, 14, 15, and 16 are not relevant to this case where his communication with nonparties is not germane to the case.

To more appropriately tailor the request to the issues presented in this case, the requests are modified to any officer or director of SunFlora or person who has a direct ownership interest in the company and to just those communications involving SunFlora's CBD products.[16] As such, the Court denies Nugent's motion to quash as to Requests Nos. 12 as modified to all communications between Nugent an any officer, director, or person with direct ownership interest at SunFlora from January 1, 2018 to the present that relate to just those communications involving SunFlora's CBD products.

### h. Request No. 13

Request No. seeks all communications between Nugent and any persons who owns, operates, and invests, in a CBD business that relates to its products. The Court finds that the request is overbroad and unsalvageable through appropriate limiting scope that would not result in the

---

[16] The Court here notes the disagreement between it and counsel for Scott Fetzer in extending this request to persons who have an indirect ownership interest in SunFlora. The Court will not permit this request to be extended to any person who has an indirect ownership interest where no defining limitation on what exactly constitutes an indirect ownership interest was given.

request being subsumed by request twelve. As such, the Court strikes this request and grants Nugent's motion to quash with respect to Request No. 13.

### i.   Requests Nos. 14-16

Requests fourteen, fifteen, and sixteen seek communications between Nugent and persons in the CBD business that relate to Kirby and the inverse, communications between Nugent and current or former Kirby distributors  that relate to Nugent's CBD business and its products.

Nugent objects to these requests on the same grounds he objects to Request No. 12—namely, that the requests are overbroad with vague phrasing, lack temporal scope, and his communications with nonparties in this case are not relevant to the underlying litigation. Scott Fetzer contends the requests are relevant to the issue of solicitation where Scott Fetzer believes that Kirby distributors who were involved with SunFlora have communicated with each other about avoiding detection by Kirby and collaborating on recruitment of other Kirby distributors into the CBD business. Scott Fetzer also claims these communications are relevant to its claims for breach of contract and tortious interference, which allege that the Defendants, former Kirby distributors, solicited Nugent and induced him to breach his contract with Kirby.

Subject to the temporal limitation of January 1, 2018 to the present, the Court find these requests permissible. As such, the Court denies Nugent's motion to quash with respect to Requests Nos. 14, 15, and 16, subject to the temporal limitations of January 1, 2018 to the present.


### j.   Request No. 17

Nugent also contends that Subpoena Request No. 17 is unduly burdensome where it seeks production of "[a]ll communications between you and any employee or representative of Kirby since November 28, 2018." R. Doc. 12-7. Nugent explains this request contains no subject matter

parameter and is more suggestive of a fishing expedition than a proper discovery request. Nugent further contends that the request is not limited to Nugent and the parties in the case—namely, Quinn and Ramker. Nugent contends that even if such requests were limited to his communications between himself and Quinn and/or Ramker that the request would still be improper where Scott Fetzer can, and should, obtain the communications directly from the partiers, rather than burdening nonparty Charles Nugent.

Scott Fetzer, in opposition, contends that the communications are limited in temporal scope to communications that date back two years. Scott Fetzer also contends that Nugent's arguments is inherently flawed where the volume of any communications should not be large Nugent has made repeated assertions that he has had only peripheral involvement in Defendant's CBD business. Scott Fetzer also contends that since Nugent's termination from the company, his communications with Kirby employees and representative should be at most minimal.

The Court finds Request No. 17 overbroad and neither tied to CBD business nor the solicitation or recruitment of Kirby employees and agents. As such, the Court finds this request not relevant to the underlying proceeding. Accordingly, the Court grants Nugent's motion to quash with respect to Request No. 17.

### k. *Request No. 18*

Request eighteen requests information between Nugent and any person not a lawyer related to this lawsuit. With respect to Request No. 18, Scott Fetzer contends that the underlying action was filed less than two years ago, and the purpose of this request is to simply discover whether Nugent has communicated with anyone, other than his counsel, about the underlying lawsuit. While Scott Fetzer claims this request is necessary to prevent Marcus Quinn and Nathan Ramker from using persons such as Charles Nugent as proxies to discuss the happenings of the lawsuit

without creating a direct paper trail back to Quinn and Ramker, that position is not supported by the law. The issue in the underlying action is not the presence of the lawsuit, but breach of the distributor agreement. To that effect, the request is not sufficiently tailored to the alleged civil conspiracy to allow discovery into these communications. As the Court finds this request overbroad, the Court, accordingly, grants Nugent's motion to quash as to Request No. 18.

## IV.     Conclusion

Accordingly,

**IT IS ORDERED** that **Non-Party Charles Nugent's Motion to Quash Subpoena (R. Doc. 1)** is **GRANTED IN PART** and **DENIED IN PART AS MODIFIED.**

**IT IS FURTHER ORDERED** that the motion is **GRANTED** with respect to **Requests Nos. 1, 2, 3, 5, 6, 7, 9, 11, 13, 17, and 18.**

**IT IS FURTHER ORDERED** that the motion is **DENIED AS MODIFIED** with respect to **Requests Nos. 4, 7, 8, 10, 12, 14, 15, and 16** stipulated herein.

New Orleans, Louisiana, this 19th day of March 2020.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**